UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EXELA PHARMA SCIENCES, LLC<br>1245 Blowing Rock Blvd.<br>Lenoir, NC 28645<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>DEPARTMENT OF HEALTH<br>AND HUMAN SERVICES,<br>Hubert H. Humphrey Building, Room 729H<br>200 Independence Avenue, SW<br>Washington, D.C., 20201<br><br>　　　　　　　　Defendant. | Civil Action<br><br>No.1:23-cv-1242<br><br><br><u>COMPLAINT</u> |

INTRODUCTION

1.　　Plaintiff Exela Pharma Sciences, LLC ("Exela" or "Plaintiff") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, challenging the failure of Defendant the Department of Health and Human Services ("HHS" or "Defendant"), to respond to and fulfill Exela's FOIA request for records.

2.　　Exela submitted three FOIA requests to HHS on March 13, 2023.

3.　　Exela's first FOIA request seeks documents and records related to the development, drafting, and/or publication of the Food and Drug Administration's ("FDA") interim draft guidance titled *Small Volume Parenteral Drug Products and Pharmacy Bulk Packages for Parenteral Nutrition: Aluminum Content and Labeling Recommendations* (the "December 2022 Draft Guidance"), which proposes to substantially increase the amount of aluminum permitted in cysteine hydrochloride injection products ("FOIA Request One"). Ex. 1.

1

4. Exela's second FOIA request seeks documents and records related to the submission and review of Abbreviated New Drug Application ("ANDA") 213073, ANDA 214082, and ANDA 209994 by HHS. ("FOIA Request Two"). Ex. 12.

5. Exela's third FOIA request seeks documents and records related to HHS's external communications with Congress and other third parties regarding aluminum content in cysteine drug products ("FOIA Request Three"). Ex. 21.

6. Exela accordingly brings this suit to compel HHS to immediately respond to Exela's FOIA requests and promptly disclose all responsive, non-exempt records.

## PARTIES

7. Plaintiff Exela is a company existing under the laws of the state of Delaware and authorized to do business in North Carolina, having a principal place of business at 1245 Blowing Rock Blvd., Lenoir, North Carolina 28645. Exela develops, manufactures, and markets sterile injectable pharmaceutical products.

8. Defendant HHS is a federal agency within the meaning of the Freedom of Information Act, 5 U.S.C. § 552(f)(1).

## LEGAL STANDARD

9. FOIA requires a federal administrative agency to promptly make available requested, non-exempt agency records in response to a request that (a) reasonably describes such records, and (b) "is made in accordance with published rules stating the time, place, fees, . . . and procedures to be followed." 5 U.S.C. § 552(a)(3)(A); *see also* 45 C.F.R. § 5.21.

10. FOIA requires federal agencies to respond to a valid request within 20 working days (exempting Saturdays, Sundays, and legal public holidays) after receipt of such request,

2

including notifying the requestor immediately of its determination, the reasons therefore, and the right to appeal any adverse determination. 5 U.S.C. § 552(a)(6)(A)(i); 45 C.F.R. § 5.24.

11. This 20-day time limit may not be tolled by the agency, except (a) that the agency may make one request of the requester for additional information regarding the specifics of the request and toll the 20-day period while it is waiting for that information; or (b) if it is necessary to clarify with the requester issues regarding fee assessment. 5 U.S.C. § 552(a)(6)(A)(ii); 45 C.F.R. § 5.24(c). In either case, the agency's receipt of the requester's response ends the tolling period. *Id.*

12. In "unusual circumstances," FOIA allows the 20-day time limit to be extended 10 days by written notice "setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched." 5 U.S.C. § 552(a)(6)(B)(i); *see also* 45 C.F.R. § 5.24(f).

13. If "unusual circumstances" are invoked, the agency must not only provide written notice as detailed above but must also provide the requester "an opportunity to limit the scope of the request so that it may be processed within that time limit or an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request." 5 U.S.C. § 552(a)(6)(B)(ii); *see also* 45 C.F.R. § 5.24(f).

14. "Unusual circumstances" (as used in the context of FOIA) only occur when, to the extent reasonably necessary to the proper processing of the requester's requests, the agency would need to (1) search for and collect records from another facility separate from the office processing the request; (2) search for, collect, and properly examine a voluminous amount of records demanded in a single request; or (3) consult with another agency to satisfy the request. *See* 5 U.S.C. § 552 (a)(6)(B)(iii).

15. If the federal agency does not respond to a FOIA request by the statutory deadline, the requester is deemed to have exhausted administrative remedies and may immediately pursue judicial review. 5 U.S.C. § 552(a)(6)(C)(i).

## JURISDICTION AND VENUE

16. This Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1331, 2201.

17. Venue lies with this district under 28 U.S.C. § 1391(e)(1) because an agency of the United States is a Defendant.

## FACTS

18. Exela is an award-winning specialty pharmaceutical company that develops, manufactures, and markets high-quality pharmaceutical products, with a particular focus on producing generic sterile injectable products for the U.S. market.

19. One particular pharmaceutical product that Exela has developed, manufactured, and marketed is an L-Cysteine injection product used as a nutritional supplement for preterm newborns and other infants (together, "newborns") and a small number of adults with severe liver disease (together, "high-risk individuals"). Exela's L-Cysteine injection product is called Elcys® and was approved by the FDA on April 16, 2019.

20. Elcys® is a parenteral nutrition ("PN") product that delivers essential nutrients intravenously as part of a nutrition regimen for newborns and high-risk individuals. The therapeutically active ingredient in Elcys® is L-cysteine hydrochloride ("cysteine"), which is an amino acid that is necessary for all humans to mitigate oxidative stress on their bodies and promote the proper absorption of essential nutrients. While healthy adults naturally produce enough

cysteine to meet their needs, newborns and high-risk individuals require daily cysteine infusions as part of a PN regimen.

21. PN products such as Elcys® are critically important to the development and survival of these vulnerable patients. However, these same PN products can be a major source of aluminum toxicity. Unfortunately, it is impossible to manufacture cysteine drug products that are 100 percent free of impurities, including aluminum.

22. Newborns receiving PN treatments are especially at risk from exposure to trace amounts of aluminum because their kidneys are underdeveloped, which means they cannot expel excess aluminum as efficiently as healthy adults can. The adverse effects of too much neonatal aluminum exposure are well documented: decades of research established that just a few days of exposure to excess aluminum in neonatal care can lead to lasting toxicity in the brain, skeletal system, liver, and erythropoietic system. Even fleeting exposure to excess amounts of aluminum can pose grave risks to preterm and other neonates.

23. The FDA is an agency of HHS that regulates clinical investigations of products under its jurisdiction. The FDA previously strictly limited the amount of aluminum that could be present in approved PN products, including cysteine. For example, when the FDA was reviewing Elcys®, it imposed an aluminum concentration limit of 145 micrograms per liter ("mcg/L") in a 5% cysteine solution, *i.e.*, 0.0042 mcg Al/mg cysteine.

24. Exela spent millions of dollars to minimize the amount of aluminum in Elcys® and to satisfy this regulatory requirement. The FDA eventually approved Elcys® with a labeled aluminum content amount of no more than 120 mcg/L (0.0035 mcg Al/mg cysteine).

25. In December 2022, however, the FDA released an interim "Draft Guidance" proposing to substantially increase its recommended aluminum limits for cysteine products. The

FDA's December 2022 Draft Guidance suggests that the FDA could allow cysteine hydrochloride products intended for PN with aluminum content as high as 2500 mcg/L in a 7.25% cysteine hydrochloride product, *i.e.*, 0.0500 mcg Al/mg cysteine, a significantly higher aluminum content limit than the FDA enforced against Exela (after adjusting for the clinically irrelevant cysteine concentration difference between 5.0% and 7.25% cysteine hydrochloride products).

26. On or about January 30, 2023, Exela became aware that the FDA had approved a Nivagen Pharmaceuticals, Inc. ANDA (the "Nivagen ANDA") for another cysteine hydrochloride injection product. Similar to Elcys®, the therapeutically active ingredient in the Nivagen ANDA is L-cysteine. However, unlike the low amounts of aluminum permitted in Elcys®, Nivagen has publicly disclosed that the Nivagen ANDA product is approved to contain up to 3000 mcg/L of aluminum in a 7.25% cysteine hydrochloride solution, which is even higher than the already extraordinary 2500 mcg/L limitation proposed in the December 2022 Draft Guidance.

27. Exela has recently been made aware that the FDA has stayed (but has not revoked or vacated) its approval of Nivagen's ANDA, pending further assessment of its safety by the Agency. Because (1) the Nivagen ANDA remains approved and (2) Exela cannot predict with any certainty how long the Agency may keep in place this stay, the need for the information sought by Exela remains both critical and urgent.

28. Exela submitted three FOIA requests to seek records regarding, *inter alia*, HHS's proposed decision to increase the aluminum content limits applicable to PN products, external communications with third parties regarding that course of action, and any consideration by the agency regarding the December 2022 Draft Guidance's harmful implications for newborns and high-risk individuals.

A.      **FOIA Request One**

29.     Exela submitted FOIA Request One on March 13, 2023, requesting records regarding the development, drafting, and/or publication of the December 2022 Draft Guidance, with the requested date range spanning January 1, 2021, through the date of production. Ex. 1. This request expressly included, *inter alia*, records within HHS as well as between HHS and any other Federal or State agencies other than the FDA, Congress, and any non-governmental entities or individuals. *Id.* at 1-2.

30.     FOIA Request One included a request that responsive documents be made available as soon as they are located and reviewed via a rolling production. *Id.* at 4.

31.     FOIA Request One also included a request for expedited processing. In making that request, Exela argued that the lack of public information regarding aluminum levels in cysteine drug products could "reasonably be expected to pose an imminent threat to the life or physical safety of" newborns. *Id.* at 2-3.

32.     After submitting FOIA Request One through the online portal, Exela received a confirmation of submission of FOIA Request One via email on March 14, 2023, along with a reference number, 2023-00558-FOIA-OS. Ex. 2.

33.     On March 15, 2023, HHS sent an email to Exela requesting clarification regarding FOIA Request One. Ex. 3. Attached to the email was a letter dated March 15, 2023, in which HHS stated that the records requested were not described "with enough specificity to allow [HHS] to continue with the processing of [Exela's] request." Ex. 4. However, HHS did not request information or clarification regarding the scope or meaning of the requests themselves; instead, HHS requested that Exela provide the "name of HHS employees and name and email domain names of all external individuals who communicate" relating to the subject matter of FOIA

Request One and requested Exela provide key search terms "for an effective and efficient search". *Id.*

34. Exela responded to HHS's "clarification letter" on March 20, 2023. Exs. 5 and 6. In its response, Exela explained that its original request was sufficiently specific under FOIA, and that the regulations HHS relied on in the clarification letter do not require FOIA requesters to identify each (or any) of the particular individuals who may have been involved in creating certain responsive records, or to supply any of the additional information demanded. Ex. 5. Nonetheless, Exela provided to HHS a suggested list of 33 names and email domains for its search along with key search terms that may be responsive to the request, while making clear that it was not limiting the scope of its request in any way. *Id.* Exela indicated that because HHS had provided no basis for refusing to commence a search, HHS's clarification letter was inadequate to toll its 20-day deadline for a response under FOIA. *Id.* at 1, n.1.

35. On March 28, 2023, Exela received an email and acknowledgement letter dated March 28, 2023, confirming that FOIA Request One was received by HHS on March 14, 2023. Exs. 7 and 8.

36. Additionally, in the March 28 letter, HHS invoked "unusual circumstances" stating the records Exela seeks require the agency to search another office. Ex. 7. HHS asserted it would need *more than* the 10 additional days added by the invocation of "unusual circumstances" under FOIA. *Id.* HHS was not clear as to its exact timeline, indicating only that the actual time required to respond to Exela's request would be determined by the complexity and volume of the records search. *Id.* HHS also suggested that Exela may wish to (1) narrow the scope of its request or (2) agree to an alternative time frame for processing. *Id.*

37. On March 28, 2023, Exela received a separate email from HHS indicating that Exela's request was now "In Process." Ex. 9.

38. On April 18, 2023, Exela sent a letter to HHS, in which Exela agreed to limit the scope of its original request. Ex. 10. Accordingly, instead of the original date range of January 1, 2021 through the date of production, Exela proposed a narrowed date range of December 1, 2021, through the date of production. *Id.* To date, HHS has not responded to Exela's proposed narrowing of its request. Exela also inquired regarding its request for expedited processing because HHS had not communicated its determination in response to that request, as required by FOIA. *Id.*

39. On April 20, 2023, HHS denied Exela's request for expedited processing. Ex. 11. HHS stated that Exela had failed to demonstrate a "compelling need." *Id.*

40. Since March 14, 2023, the date HHS acknowledged receipt of Exela's FOIA Request One, 34 working days have passed.

41. Since March 20, 2023, the date Exela responded to HHS's clarification letter, 30 working days have passed.

42. Exela maintains that the time limit imposed by FOIA was not properly tolled by HHS's March 15, 2023 "clarification letter." Regardless, as of May 1, 2023, at the close of business hours, at least 30 working days have passed since HHS received Exela's request. *See* 5 U.S.C. § 552(a)(6)(A)(i).

43. To date, HHS has not (1) made or communicated its determination in response to FOIA Request One, (2) provided any responsive materials, (3) explained that responsive materials have been or will be withheld, (4) communicated any basis for withholding records, or (5) communicated any timeline by which Exela can expect its requests to be processed.

9

B.     **FOIA Request Two**

44.    Exela submitted FOIA Request Two on March 13, 2023, requesting any records relating to ANDA 213073, ANDA 214082, and ANDA 209994, with the requested date range spanning January 1, 2021, through the date of production. Ex. 12. This request expressly included, *inter alia*, all communications within HHS and by or between HHS (including any Office, Division (other than the FDA), or any other administrative unit of the Agency, and/or any HHS employees) regarding the aluminum content of the three subject drug products. *Id.* at 1-2.

45.    FOIA Request Two included a request that responsive documents be made available as soon as they are located and reviewed via a rolling production. *Id.* at 4.

46.    FOIA Request Two also included a request for expedited processing. In making that request, Exela argued that the lack of public information regarding aluminum levels in cysteine drug products could "reasonably be expected to pose an imminent threat to the life or physical safety of" newborns. *Id.* at 2-3.

47.    After submitting FOIA Request Two through the online portal, Exela received a confirmation of submission of FOIA Request Two via email on March 14, 2023, along with a reference number, 2023-00557-FOIA-OS. Ex. 13

48.    On March 15, 2023, HHS sent an email to Exela requesting clarification regarding FOIA Request Two.[1] Ex. 14. Attached to the email was a letter dated March 15, 2023, in which HHS stated that the records requested were not described "with enough specificity to allow [HHS] to continue with the processing of [Exela's] request." Ex. 15. However, HHS did not request information or clarification regarding the scope or meaning of the requests themselves; instead,

---

[1] The attachment mistakenly referenced another FOIA request. *See* Ex. 14. Exela informed HHS of the mistake, and HHS sent another letter on March 17, 2023, containing the same substantive information.

HHS requested that Exela provide the "name of HHS employees and name and email domain names of all external individuals who communicate" relating to the subject matter of FOIA Request Two and requested Exela provide key search terms "for an effective and efficient search". *Id.*

49. Exela responded to HHS's "clarification letter" on March 20, 2023. Exs. 16 and 6. In its response, Exela explained that its original request was sufficiently specific under FOIA, and that the regulations HHS relied on in the clarification letter do not require FOIA requesters to identify each (or any) of the particular individuals who may have been involved in creating certain responsive records, or to supply any of the additional information demanded. Ex. 16. Nonetheless, Exela provided to HHS a suggested list of 33 names and email domains for its search along with key search terms that may be responsive to the request, while making clear that it was not limiting the scope of its request in any way. *Id.* Exela indicated that because HHS had provided no basis for refusing to commence a search, HHS's clarification letter was inadequate to toll its 20-day deadline for a response under FOIA. *Id.* at 1, n.1.

50. On March 28, 2023, Exela received an email and acknowledgement letter dated March 28, 2023, confirming that FOIA Request Two was received by HHS on March 14, 2023. Exs. 17 and 18.

51. Additionally, in the March 28 letter, HHS invoked "unusual circumstances," stating the records Exela seeks require the agency to search another office. Ex. 17. HHS asserted it would need *more than* the 10 additional days added by the invocation of "unusual circumstances" under FOIA. *Id.* HHS was not clear as to its exact timeline, indicating only that the actual time required to respond to Exela's request would be determined by the complexity and volume of the records

11

search. *Id.* HHS also suggested that Exela may wish to (1) narrow the scope of its request or (2) agree to an alternative time frame for processing. *Id.*

52. On April 18, 2023, Exela sent a letter to HHS, in which Exela agreed to limit the scope of its original request, including narrowing the scope of the request for each of the three referenced ANDAs and narrowing the date range for each of the three referenced ANDAs. Ex. 19. To date, HHS has not responded to Exela's proposed narrowing of its request. Exela also inquired regarding its request for expedited processing because HHS had not communicated its determination in response to that request, as required by FOIA. *Id.*

53. On April 20, 2023, HHS denied Exela's request for expedited processing. Ex. 20. HHS stated that Exela had failed to demonstrate a "compelling need." *Id.*

54. Since March 14, 2023, the date HHS acknowledged receipt of Exela's FOIA Request Two, 34 working days have passed.

55. Since March 20, 2023, the date Exela responded to HHS's clarification letter, 30 working days have passed.

56. Exela maintains that the time limit imposed by FOIA was not properly tolled by HHS's March 15, 2023 "clarification letter." Regardless, as of May 1, 2023, at the close of business hours, at least 30 working days have passed since HHS received Exela's request. *See* 5 U.S.C. § 552(a)(6)(A)(i).

57. To date, HHS has not (1) made or communicated its determination in response to FOIA Request Two, (2) provided any responsive materials, (3) explained that responsive materials have been or will be withheld, (4) communicated any basis for withholding records, or (5) communicated any timeline by which Exela can expect its requests to be processed.

C.     **FOIA Request Three**

58.    Exela submitted FOIA Request Three on March 13, 2023, requesting all records containing or reflecting communication between HHS and Congress and other third parties regarding aluminum content in cysteine drug products, with the requested date range spanning January 1, 2021, through the date of production. Ex. 21.

59.    FOIA Request Three included a request that responsive documents be made available as soon as they are located and reviewed via a rolling production. *Id.* at 4.

60.    FOIA Request Three also included a request for expedited processing. In making that request, Exela argued that the lack of public information regarding aluminum levels in cysteine drug products could "reasonably be expected to pose an imminent threat to the life or physical safety of" newborns. *Id.* at 2-3.

61.    After submitting FOIA Request Three through the online portal, Exela received a confirmation of submission of FOIA Request Three via email on March 13, 2023, along with a reference number, 2023-00555-FOIA-OS. Ex. 22.

62.    On March 14, 2023, HHS sent an email to Exela requesting clarification regarding FOIA Request Three. Ex. 23. Attached to the email was a letter dated March 15, 2023, in which HHS stated that the records requested were not described "with enough specificity to allow [HHS] to continue with the processing of [Exela's] request. Ex. 24. However, HHS did not request information or clarification regarding the scope or meaning of the requests themselves; instead, HHS requested that Exela provide the "name of HHS employees and name and email domain names of all external individuals who communicate" relating to the subject matter of FOIA Request Three and requested Exela provide key search terms "for an effective and efficient search". *Id.*

63. Exela responded to HHS's "clarification letter" on March 20, 2023. Exs. 25 and 6. In its response Exela explained that its original request was sufficiently specific under FOIA, and that the regulations HHS relied on in the clarification letter do not require FOIA requesters to identify each (or any) of the particular individuals who may have been involved in creating certain responsive records, or to supply any of the additional information demanded. Ex. 25 Nonetheless, Exela provided to HHS a suggested list of 33 names and email domains for its search along with key search terms that may be responsive to the request, while making clear that it was not limiting the scope of its request in any way. *Id.* Exela indicated that because HHS had provided no basis for refusing to commence a search, HHS's clarification letter was inadequate to toll its 20-day deadline for a response under FOIA. *Id.* at 1, n.1.

64. On March 28, 2023, Exela received an email and acknowledgement letter dated March 28, 2023, confirming that FOIA Request Three was received by HHS on March 14, 2023. Exs. 26 and 27.

65. Additionally, in the March 28 letter, HHS invoked "unusual circumstances" stating the records Exela seeks require the agency to search another office. Ex. 26. HHS asserted it would need *more than* the 10 additional days in addition to the 10 days already added by the invocation of "unusual circumstances" under FOIA. *Id.* HHS was not clear as to its exact timeline, indicating only that the actual time required to respond to Exela's request would be determined by the complexity and volume of the records search. *Id.* HHS also suggested that Exela may wish to (1) narrow the scope of its request or (2) agree to an alternative time frame for processing. *Id.*

66. On March 28, 2023, Exela received a separate email from HHS indicating that Exela's request was now "In Process." Ex. 28.

67. On April 18, 2023, Exela sent a letter to HHS, in which Exela agreed to limit the scope of its original request. Ex. 29. Accordingly, instead of the original date range of January 1, 2021, through the date of production, Exela proposed a narrowed date range of December 1, 2021, through the date of production. *Id.* To date, HHS has not responded to Exela's proposed narrowing of its request. Exela also inquired regarding its request for expedited processing because HHS had not communicated its determination in response to that request, as required by FOIA. *Id.*

68. On April 20, 2023, HHS denied Exela's request for expedited processing. Ex. 30. HHS stated that Exela had failed to demonstrate a "compelling need." *Id.*

69. Since March 13, 2023, the date HHS acknowledged receipt of Exela's FOIA Request One, 35 working days have passed.

70. Since March 20, 2023, the date Exela responded to HHS's clarification letter, 30 working days have passed.

71. Exela maintains that the time limit imposed by FOIA was not properly tolled by HHS's March 14, 2023 "clarification letter." Regardless, as of May 1, 2023, at the close of business hours, at least 30 working days had passed since HHS received Exela's request. *See* 5 U.S.C. § 552(a)(6)(A)(i).

72. To date, HHS has not (1) made or communicated its determination in response to FOIA Request One, (2) provided any responsive materials, (3) explained that responsive materials have been or will be withheld, (4) communicated any basis for withholding records, or (5) communicated any timeline by which Exela can expect its requests to be processed.

## FIRST CLAIM FOR RELIEF[2]
### (Failure to Comply with Statutory Deadlines in Violation of FOIA)

73. Plaintiff repeats, re-alleges, and reincorporates the allegations in the foregoing paragraphs as though fully set forth herein.

74. FOIA requires HHS to provide a final determination within 20 working days after the receipt of Exela's FOIA request. 5 U.S.C. § 552(a)(6)(A). This 20-day time limit may be extended an additional 10 working days in the event of "unusual circumstances." 5 U.S.C. § 552(a)(6)(B)(i); *see also* 45 C.F.R. § 5.24(f).

75. More than 30 working days have passed since Exela's three FOIA requests were received and logged by HHS. *See* Exs. 1, 12, and 21.

76. To date, HHS has not provided a final determination in response to Exela's FOIA requests, nor has it communicated when Exela can expect its requests to be processed.

77. Additionally, to date, HHS has not responded to Exela's April 18, 2023, proposed narrowing of its request, *See* Exs. 10, 19, and 29.

78. HHS has failed to make a timely determination in response to Exela's FOIA requests, in violation of FOIA. *See* 5 U.S.C. § 552(a)(6).

79. All administrative remedies required by FOIA have been constructively exhausted. *See* 5 U.S.C. § 552(a)(6)(C)(i).

## SECOND CLAIM FOR RELIEF
### (Unlawful Withholding of Agency Records in Violation of FOIA)

80. The allegations in the foregoing paragraphs are expressly incorporated herein as if restated in full.

---

[2] Each claim for relief brought by Exela in this complaint applies to all three FOIA requests detailed above.

81. FOIA requires HHS to process records requests and promptly provide the requested records or the reasonably segregable portion of records not subject to a FOIA exemption. 5 U.S.C. § 552(a)(3)(A).

82. To date, HHS has neither provided nor made available any responsive documents in response to Exela's FOIA requests, nor has HHS claimed that any responsive records are exempt from disclosure.

83. Therefore, HHS's failure to promptly produce requested records or claim applicable exemptions violates FOIA. 5 U.S.C. § 552(a)(3)(A).

## THIRD CLAIM FOR RELIEF
### (Declaratory Judgment)

84. The allegations in the foregoing paragraphs are expressly incorporated herein as if restated in full.

85. For the same reasons described in each of the previous counts, Exela is entitled to a declaratory judgment that HHS has been and is violating the law.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court:

A. Declare that HHS failed to make and communicate a timely determination regarding each of Exela's three requests, in violation of FOIA, 5 U.S.C. §§ 552(a)(6)(A)(i), (a)(6)(E)(iii);

B. Declare that HHS failed to promptly provide records responsive to each of Exela's three requests, in violation of FOIA, 5 U.S.C. § 552(a)(3);

C. Order HHS to immediately conduct a reasonable search for all responsive records and demonstrate that it employed search methods reasonably calculated to uncover all records responsive to the requests as required by FOIA, 5 U.S.C. § 552(a)(3)(C);

D. Order HHS to immediately provide a determination on Exela's requests as required by FOIA, 5 U.S.C. § 552(a)(6)(A)(i), and produce a *Vaughn* index of any responsive records withheld under claim of exemption, *see Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 145–46 (D.C. Cir. 2006);

E. Order HHS to promptly make available to Exela all responsive, non-exempt records, as required by FOIA, 5 U.S.C. § 552(a)(3);

F. Maintain jurisdiction over this action to ensure that HHS produces all non-exempt responsive records to Exela, and that any non-exempt portions of responsive records are not improperly withheld;

G. Award reasonable attorneys' fees and allowable costs, including under 5 U.S.C. § 552(a)(4)(E); and

H. Grant Exela such other and further relief to which it is justly entitled at law and in equity.

Dated: May 2, 2023

Respectfully submitted,

Jason B. Torchinsky (DCB # 976033)
Edward M. Wenger (DCB # 1001704)
Kenneth C. Daines (DCB# 1600753)
HOLTZMAN VOGEL BARAN
TORCHINSKY AND JOSEFIAK PLLC
2300 N Street, NW, Suite 643A
Washington, DC 20037
jtorchinsky@holtzmanvogel.com
emwenger@holtzmanvogel.com
kdaines@holtzmanvogel.com
Phone: (202-737-8808
Fax: (540) 341-8809

*Counsel for Plaintiff*